IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
--------------------------------------------------------------------

DWAUN E. FLEMING, SR.,

                Plaintiff,                      OPINION AND ORDER

    v.

                                            22-cv-473-wmc

DARIN KRZYZANOWSKI
and TARA ANDERSON,

                Defendants.
--------------------------------------------------------------------

Plaintiff Dwaun Fleming, Sr., who is representing himself, is proceeding on Eighth Amendment claims that defendants Darin Krzyzanowski and Tara Anderson acted with deliberate indifference to his injured hand and associated pain at Jackson Correctional Institution in April 2021. Pending before the court is defendants' motion for summary judgment on the merits of plaintiff's claims, or alternatively, on grounds of qualified immunity. (Dkt. #61.) Even viewing the evidence in a light most favorable to plaintiff, no reasonable jury could find that defendants unreasonably responded to plaintiff's medical needs under the Eighth Amendment's demanding standards. Alternatively, the court agrees that defendants are entitled to qualified immunity because it was not clearly established that defendants' responses to plaintiff's requests for treatment and a low-bunk restriction were unconstitutional. Accordingly, the court will grant defendants' motion for summary judgment.

UNDISPUTED FACTS[1]

**A.  Background**

Plaintiff Dwaun Fleming, Sr. was incarcerated at Jackson Correctional Institution ("Jackson") from September 2, 2020, to December 2, 2021, and again from October 31, 2023,

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings, as well as the underlying evidentiary record where

to the present. As a result of a boxer's fracture, plaintiff has a long history of surgeries, limited range of motion, and pain in the fourth and fifth digits of his right hand.

Defendant Darin Krzyzanowski has worked as a limited-term-employment physical therapist at Jackson since December 26, 2015. His duties include: assessing patients; designing and implementing in-clinic and cell-based treatment programs and care plans; monitoring patients; and adjusting treatment programs as appropriate based on goals, objectives, and communication with other healthcare staff.[2]

Defendant Tara Anderson worked as a nurse clinician 2 at Jackson from July 2019 to December 2022. Skilled nursing duties include: assessing and treating patient; assisting the physician in providing medical services; managing medications; providing emergency care; and maintaining medical records. However, in her capacity as a nurse, she is not legally authorized to: order testing; diagnose conditions; prescribe or modify prescriptions for medication other than over-the-counter drugs; order outside appointments, consultations, or visits with specialists; or determine treatment plans based on outside provider recommendations.

### B. Institutional Procedures Regarding Medical Care

#### 1. Health Services Requests

When an inmate has a medical concern, wishes to communicate with medical staff, or requests to be seen by Health Services Unit ("HSU") staff, he must fill out a Health Service

---

appropriate, and viewed them and all reasonable inferences in a light most favorable to plaintiffs. *See Miller v. Gonzalez*, 761 F.3d 822, 877 (7th Cir. 2014) (At summary judgment, the court must "construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

[2] More specifically as relevant here, Krzyzanowski provides physical therapy services to patients for acute and chronic conditions, such as performing assessments, then designing and implementing treatment programs and care plans for in-clinic and home exercises.

Request ("HSR") form and submit it to the HSU.[3] HSRs are then triaged by nursing staff, who try to respond to each HSR within 24 hours of receiving it. Nursing staff use their training and judgment to prioritize HSRs, appointments, and inmate needs. Before responding to an HSR, nurses like Anderson consult the patient's medical record for any information contained within the record that is pertinent to the patient's request. Moreover, even though an HSR may be directed to a specific staff member, triaging is always handled in the same manner for patient care and safety reasons, although an HSR placed in a pile for a certain staff member may contain a request for emergent care that cannot wait.

Accordingly, as did other nurses assigned to triaging, Anderson adhered to the following procedures in responding to inmate HSRs. If a patient describes new symptoms in his HSR, Anderson would schedule the inmate for a "nursing sick call." Otherwise, she may respond in writing by suggesting something for the patient to try. If the patient describes continuing symptoms with regard to an issue for which he had already been seen, Anderson would ask the HSU scheduler to put the inmate on the advanced care provider's ("ACP's") schedule. If the patient was already on the ACP's schedule, she would respond by reassuring the patient that he had an upcoming appointment.[4]

In contrast, physical therapists like Krzyzanowski do not triage HSRs and would respond to HSRs only if the triaging nurse has forwarded it to them for a response. If an HSR is forwarded, the physical therapist will generally respond on the lower section of the form.

---

[3] Sometimes inmates will use interview/information request forms instead of HSR forms, but the HSU processes interview/information requests in the same way that they process HSRs.

[4] However, as discussed in greater detail below, plaintiff avers that Anderson did *not* take any of the above actions with respect to the HSR that he submitted on April 15, 2021.

3

Regardless, physical therapists see patients only after the triaging nurse or another nurse schedules an appointment with the patient.[5]

### 2. Low Bunk Restrictions

Department of Corrections Institutions only have a certain number of beds that are classified as "low bunk" or "low tier." These beds are not granted indefinitely and are reserved for those who medically require this restriction. While nurses and physical therapists can authorize individuals for short-term placements in a low bunk or low tier for acute physical reasons, longer placements must be completed through the submission of a Special Needs Placement request to Jackson's Special Needs Committee, which reviews all requests for a low-tier and low-bunk restriction to determine whether an inmate qualifies for the requested restriction. Even then, the Special Needs Committee rarely grants an *indefinite* low-tier or low-bunk restriction to ensure that the need for this restriction remains medically necessary. Finally, security staff must determine whether low-bunk restrictions can be implemented because none may be available at the time.

### C. Plaintiff's Bed Assignments

According to plaintiff's bed assignment at Jackson, he had a low bunk for all but 17 of his 1,023 days at Jackson:

- A low bunk from September 2, 2020, to June 3, 2021.
- An upper bunk from June 3-13, 2021.

---

[5] While plaintiff attempts to dispute these factual findings with his general averment that physical therapists sometimes respond to his HSRs, this does not contradict the basic fact that the form would have first been reviewed by a triaging nurse. (*See* dkt. #74, at 3.) Indeed, plaintiff admits that he, unlike defendants, does not have any personal knowledge about the prison's triage procedure. (*Id.*)

4

- A lower bunk from June 13 to December 2, 2021, at which time he was transferred out of the institution.

- A low bunk when he returned to Jackson on October 31, 2023, until November 19, 2023, when he had an upper bunk for one day.

- A low bunk from November 20, 2023, to January 22, 2024.

- An upper bunk from January 22-28, 2024.

- A low bunk on January 28, 2024, to the present.

### D. Plaintiff's Treatment History

On October 14, 2020, plaintiff saw Dr. Bernardoni at the University of Wisconsin ("UW") Orthopedic Hand Clinic for his right hand, in which his range of motion had worsened since June 2020. Defendant Krzyzanowski evaluated plaintiff's right hand on December 16, 2020, and provided him with physical therapy to improve the range of motion in his hand on January 6 and 22, February 10, March 9 and 19. Next, on March 24, 2021, plaintiff saw another UW Orthopedist, Dr. Ryan Graf, who recommended that plaintiff be assigned to a low bunk to avoid having to climb using his right hand.[6] While on-site physician Dr. Liu placed an order for a low-bunk restriction on the same day, she limited the restriction to three months, until June 16, 2021.

After further therapy on April 2 and June 2, 2021, defendant Krzyzanowski noted that plaintiff's range of motion and function had remained unchanged for many months -- with plaintiff having limited flexion of his 4th digit and unable to make a fist -- and discharged plaintiff from formal physical therapy, but provided plaintiff with a home exercise program and

---

[6] Dr. Graf's treatment note and order report does not place a time limitation on plaintiff's need for a low bunk. (*See* dkt. #65-1, at 38 and 42.)

5

told him to follow up with an orthopedist. At that time, Krzyzanowski also extended plaintiff's low bunk for one year.

On June 16, 2021, plaintiff also saw a third UW Orthopedist, Dr. Brian McGowan, for his hand at the order of Dr. Liu and Nurse Practitioner Demler. Dr. McGowan recommended a low bunk indefinitely, so plaintiff could avoid having to use the right hand to climb to the top bunk. While the institution already had entered a low-bunk restriction for plaintiff through June 3, 2022, at PT Krzyzanowski's recommendation, a functional observation of plaintiff completed on November 18, 2021, apparently revealed that plaintiff did not have any behaviors warranting restrictions at that time. However, a week later on November 24, 2021, plaintiff saw a fourth UW Orthopedist, Dr. Stephanie Goldstein, who again recommended that plaintiff remain on a low bunk indefinitely. The very same day, therefore, Jackson's on-site physician, Dr. Liu, ordered a low-bunk restriction for plaintiff with an expiration date extended to November 15, 2022.

### E. Plaintiff's HSRs

On September 8, 2020, even before his first exam by the first UW Orthopedist, Dr. Bernardoni, and well before any medical person recommended a lower bunk restriction for plaintiff, he had already submitted an HSR to the Health Services Manager ("HSM"), asserting in part that he was supposed to have a lower bunk. The triaging nurse responded the following day by telling plaintiff that his low-bunk restriction was in effect until February 4, 2021. Krzyzanowski did not see or respond to this HSR. And on March 13, 2021, still before a second UW Orthopedist first recommended it on March 24, 2021, plaintiff again submitted an HSR to physical therapy and the Special Needs Committee, stating that he needed his low-bunk restriction extended before he got out of segregation on March 30. This HSR was

6

forwarded to PT Krzyzanowski, who did not respond until April 8, 2021, stating that plaintiff did not qualify for an indefinite or long-term, low-bunk restriction.[7] Further, on March 18, 2021, plaintiff submitted an HSR to physical therapy and the HSM, asking why he needed to be seen to get a low bunk renewed, repeating his assertion that he could not get on the top bunk at all because of his hand and back. This HSR was forwarded to Krzyzanowski, who responded on March 26, that he was extending plaintiff's low-bunk restriction by three months, which was in any event something Dr. Liu had already done two days before.

Then on March 21, 2021, plaintiff submitted an HSR to Krzyzanowski and the HSM, stating in part that he was getting out of segregation on March 30, and needed his low-bunk restriction extended. The triaging nurse responded that she would forward his request to PT and that he had a nursing appointment for evaluating whether he needed his low-bunk restriction renewed. Krzyzanowski did not see or respond to this HSR. Finally, on March 23, 2021, plaintiff once more submitted an HSR directed to physical therapy, the Special Needs Committee, and the HSM, asking why he had to be seen to get a low-bunk restriction renewed when he had one since 2019. The triaging nurse responded by telling him that he had an appointment with nursing to address his concern. Krzyzanowski also did not see or respond to this HSR.

Despite having been approved for a lower bunk at least through June 26, 2021, plaintiff sent two more requests in April seeking that designation. Specifically, on April 9, 2021, plaintiff submitted an HSR addressed to Krzyzanowski, the HSM, and the Special Needs Committee, asking why he had not qualified for a low bunk on April 8, stating that he could not get on the top bunk, and informing them that the last time he climbed to the top bunk, he

---

[7] Because it is undisputed that plaintiff was housed on a low bunk through June 16, 2021, by Dr. Liu, the court assumes that plaintiff was denied a long-term or indefinite restriction.

7

broke his left thumb, after which an off-site doctor gave him his low bunk. The triaging nurse responded by telling him that she would forward his request to the Special Needs Committee. However, PT Krzyzanowski did not see or respond to this HSR. Then again, on April 13, 2021, plaintiff submitted an HSR directed to Krzyzanowski and the HSM, stating, "If you know I can't get on the top bunk why are you trying to make me? I wrote two HSR[s] to be seen because my hand hu[r]t all the time and I hurt it I think trying to do my PT! Why I still haven't been seen yet?" This HSR was forwarded to Krzyzanowski, who told plaintiff that the Special Needs Committee could review his request at their meeting. However, the Committee decided on April 20, 2021, that plaintiff did not meet the criteria for a low-bunk restriction. Regardless, plaintiff continued to be housed with a low bunk until June 2021.

On a separate subject, plaintiff submitted another HSR on April 15, 2021, directed to physical therapy and the HSM, stating, "I need you to come see my 4 finger because it look and feel like the bone is off of place or something is not right about it and I don't know what to do at this point???? Please. (I get out seg 4/21)." Defendant Anderson responded the next day, when HSU received the HSR, telling plaintiff that she had forwarded his HSR to the HSM. According to Anderson, she knew that plaintiff was being treated by the physical therapist under the HSM's supervision, and the physical therapist would be in the best position to evaluate plaintiff's concerns regarding his finger. However, plaintiff disputes that Anderson reviewed his record, given that her response to his HSR merely stated "forwarded to HSU manager." (Dkt. #66-1.)

Finally, on July 4, 2021, plaintiff submitted an HSR to HSU in which he stated he wanted a low-bunk restriction, which expired on June 27, 2021. However, this was again much ado about nothing, since PT Krzyzanowski had already extended plaintiff's low-bunk restriction on June 2, 2021, for an additional year.

8

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

Generally, a court also construes the filings of unrepresented parties like plaintiff generously. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (noting that courts "construe pro se filings liberally"). However, the Seventh Circuit has repeatedly referred to summary judgment as the "put up or shut up" moment for parties seeking to take their claims to trial, even for pro se litigants. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Specifically, plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts"; he must respond to defendants' showing of a lack of material disputes of fact by designating specific facts in affidavits, depositions, answers to interrogatories or admissions that establish a genuine, triable issue. *Anderson*, 477 U.S. at 256-57, 261. And because those facts must be admissible at trial, plaintiff may not rely on inadmissible hearsay, speculation, or conclusory allegations to defeat summary judgment. See *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). Finally, a factual dispute can preclude summary judgment only if the facts "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

I. **Eighth Amendment**

Plaintiff was allowed to proceed on Eighth Amendment claims that: (1) PT Krzyzanowski provided inadequate medical care for plaintiff's injured finger and associated pain by failing to address his low-bunk restriction in response to the HSRs plaintiff submitted on March 13, and April 13, 2021; and (2) Nurse Anderson allegedly provided inadequate medical care for plaintiff's injured finger and associated pain by taking no action in response to his April 15, 2021 HSR that he needed to be seen because his condition had worsened. (*See* dkt. #36.)[8] The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). To prevail on a claim under the Eighth Amendment, plaintiff must show that: (1) he has an objectively serious medical condition; and (2) defendants acted with deliberate indifference to that condition. *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

The first element, an objectively serious medical condition, is one that a doctor recognizes as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Pyles*, 771 F.3d at 412. Defendants acknowledge that plaintiff's hand injury and pain is a serious medical condition, at least for purposes of summary judgment. The second

---

[8] While plaintiff also appears to seek to hold defendant Anderson liable for voting against his low-bunk restriction at a Special Needs Committee meeting, and defendant Krzyzanowski liable for not providing plaintiff with "aggressive physical therapy" ordered by an outside specialist in January 2020, delaying treatment of plaintiff's hand pain in 2020 and 2021, and not referring plaintiff to an outside specialist (*see* dkt. #72, at 2-5 and 8-13), the court's screening order did not grant him leave to do so, placing all of these claims outside the scope of this lawsuit. *See Werner v. Hamblin*, No. 12-cv-0096, 2013 WL 788076, *2 (E.D. Wis. Mar. 1, 2013) ("[T]he screening order limits the scope of [a] case."). In any event, neither plaintiff's previous allegations on which he was allowed leave to proceed nor his new allegations against defendants rise to the level of a Constitutional claim.

element, an official's deliberate indifference, relates to the official's subjective state of mind. *Perez v. Fenoglio*, 792 F.3d 768, 776-77 (7th Cir. 2015); *Arnett*, 658 F.3d at 750. Plaintiff must show that each defendant knew of and disregarded a substantial risk of harm. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). In cases such as this one, in which a prisoner acknowledges that he received some treatment for his medical condition but claims the treatment was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). This is where plaintiff's proof is lacking.

Specifically, medical providers violate the Eighth Amendment if they prescribe a course of treatment without exercising medical judgment or prescribe treatment that they know will be ineffective. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662-63 (7th Cir. 2016). Thus, it is not enough for plaintiff to show: he personally disagrees with a defendant's conclusions about the appropriate treatment, *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); other medical providers reached a different conclusion about what treatment to provide plaintiff, *Pyles*, 771 F.3d at 409; or even that defendants could have provided *better* treatment, *Lee v. Young*, 533 F.3d 505, 511-12 (7th Cir. 2008). Rather, plaintiff must offer sufficient evidence for a reasonable jury to find that defendants' medical judgment was "so significant a departure from accepted professional standards or practices that it calls into question whether [that provider] actually was exercising his [or her] professional judgment." *Pyles*, 771 F.3d at 409. As set forth separately below for each defendant, plaintiff has not met this burden.

11

### A. PT Krzyzanowski

While plaintiff alleges that defendant Krzyzanowski was deliberately indifferent to his need for a low-bunk restriction in March and April 2021, the undisputed medical record shows that Krzyzanowski actually ordered a low-bunk restriction for plaintiff several times throughout 2021, including ordering an initial three-month restriction beginning on or around March 26, 2021, then another year-long restriction beginning on or around June 3, 2021. Indeed, plaintiff concedes that he went without a low-bunk restriction for a *total* of only 17 out of his entire 1,023 days at Jackson.

While plaintiff would blame Krzyzanowski for the 10 days he went without a low bunk from June 3-13, 2021, he has failed to establish with convincing or even admissible evidence that this short gap (or any of the other brief periods he went without a lower bunk) was *caused* by PT Krzyzanowski's disregard, as opposed to the administrative process. Likewise, it is undisputed that: while physical therapists like Krzyzanowski can authorize only short-term placements in a low bunk, longer placements must be approved by the Special Needs Committee, which rarely grants *indefinite* low-bunk restrictions to ensure enough low bunks remain available for those in need; and *security staff* ultimately determines whether a low-bunk restriction can be implemented for an individual inmate based on availability and an inmate's health. *See Machicote v. Roethlisberger*, 969 F.3d 822, 827-28 (7th Cir. 2020) ("Administrative convenience can be a permissible factor in a prison's treatment decision, [unless it is] 'considered to the exclusion of reasonable medical judgment about inmate health.'") (quoting *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011)); *cf.*, *Jordan v. Gunderson*, No. 22-cv-692, 2024 WL 3534751, at *5 (W.D. Wis. Jul. 25, 2024), *aff'd sub nom. Jordan v. Dobbert*, No. 24-2349, 2025 WL 998007 (7th Cir. Apr. 3, 2025) (medical providers may reasonably consider a resource availability and other prisoners' needs when deciding whether to issue low-bunk

restriction). Thus, even if plaintiff is correct that he should have qualified for an indefinite low-bunk restriction, he has failed to show that either of the defendants in this case had the authority to provide one. *See Stewart v. Syed*, No. 18-cv-003-wmc, 2020 WL 7696095, at *14 (W.D. Wis. Dec. 28, 2020) (finding nurse's lack of authority to modify medications precluded an inference of deliberate indifference).

Moreover, contrary to plaintiff's contention, the undisputed evidence conclusively demonstrates that Krzyzanowski provided plaintiff with *at least* monthly physical therapy during the March to April 2021 time frame at issue in this case, including considerable attention to plaintiff's requests for a low bunk restriction, by issuing plaintiff repeated, limited-term restrictions and referring him to the Special Needs Committee to request a more permanent restriction. Thus, on this record, there is no reasonable inference that Krzyzanowski failed to exercise ordinary medical judgment, was obliged to take any further action regarding plaintiff's multiple requests for a low bunk, or otherwise acted with deliberate indifference to plaintiff's medical needs.

### B. Nurse Anderson

While plaintiff also alleges that Nurse Anderson acted with deliberate indifference to his April 15, 2021 HSR asking HSU to come see him because it looked and felt like the bone in his fourth finger was out of place, plaintiff has offered no proof that Anderson could not provide the type of advice or treatment plaintiff requested as a nurse clinician, nor was plaintiff entitled to any *specific* treatment, especially when he had recently been seen by his physical therapist *and* orthopedic specialist. Nevertheless, plaintiff would fault Nurse Anderson for failing to do *more* to address his complaint about "something not looking right" about the bone alignment in his finger. However, it is undisputed that Anderson lacked the authority to order

13

testing, diagnose conditions, order or modify prescriptions, order specialist consultations, or determine treatment.

Moreover, there is no evidence from which a reasonable jury would infer that plaintiff was suffering an emergency or even required pain relief. Rather, the only permissible inference is that Anderson exercised her medical judgment in immediately triaging plaintiff's HSR upon receipt, then forwarding it to the HSM for further action. Indeed, the only permissible inference is that Anderson acted reasonably, as either a physical therapist or orthopedist would be in the best position to evaluate plaintiff's concerns with the alignment of bones in his finger. Accordingly, Anderson's arguable failure to do more than ensure that the HSM knew about plaintiff's concerns does not support a finding of deliberate indifference.

### III. Qualified Immunity

Finally, defendants have asserted an alternative, legal defense of qualified immunity, which protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or, in other words, if the law was not so clear at the time of the alleged violation that every reasonable official would understand that their conduct was unconstitutional, *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023). Once the defense is raised, plaintiff bears the burden of defeating it in one of three ways: (1) point to a closely analogous, binding case that established a right to be free from the type of action the defendants performed; (2) identify a clear trend in the case law showing recognition of the right by controlling precedent is merely a question of time; or (3) show that the defendants' conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620-21 (7th Cir. 2022) (citations omitted).

Here, plaintiff has neither pointed to nor has the court found any closely analogous and binding cases or a clear trend in the case law establishing that defendants clearly violated his constitutional rights by deliberately ignoring an objectively serious threat to his health and safety, or that their alleged misconduct was so egregious and unreasonable as to result in actionable harm, based on their facially reasonable exercise of normal medical discretion. Because defendants are entitled to qualified immunity, the court will grant their motion for summary judgment for this additional reason as well.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #61) is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 27th day of January, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge